UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
CVI INVESTMENTS, INC.,                                         :
                                                               :
                         Plaintiff,                            :
                                                               :   1:16-CV-2787
              v.                                               :
                                                               :   **COMPLAINT**
PATRIOT NATIONAL, INC.,                                        :
                                                               :
                         Defendant.                            :
                                                               :
---------------------------------------------------------------X

Plaintiff CVI Investments, Inc., by its attorneys, Ballard Spahr LLP, for its complaint, alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract action arising from the breach by defendant Patriot National, Inc. ("Patriot") of its obligations under the terms of a Series B Warrant ("Warrant") issued to plaintiff CVI Investments, Inc. ("CVII") by Patriot in connection with the acquisition by CVII in December 2015 of $13.5 million in Patriot common stock from Patriot's CEO Steve Mariano.

2. CVII complied in all respects with its obligations under the transaction agreements that led to the issuance of the Warrant, and, on April 5, 2016, submitted to Patriot an Exercise Notice pursuant to the terms of the Warrant seeking the issuance of 250,000 shares of Patriot stock.

3. Patriot refused to issue shares in response to the Exercise Notice.

4. CVII seeks a finding that Patriot is in breach of its obligations to CVII and further seeks specific performance and preliminary and permanent injunctive relief precluding Patriot

from taking any action inconsistent with CVII's rights under the Warrant and requiring Patriot to comply with its obligations under the Warrant to issue shares to CVII.  CVII also seeks an award of money damages, interest, attorneys' fees and costs, as provided under the Warrant.

## THE PARTIES

5. CVII is a foreign company organized and existing under the laws of the Cayman Islands with its principal place of business in the Cayman Islands.

6. Patriot is a publicly-held Delaware corporation with its principal place of business in Florida and its shares traded on the New York Stock Exchange ("NYSE").

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

8. Patriot consented in the Warrant to the jurisdiction of this Court for the adjudication of any dispute under the Warrant or in connection with the Warrant.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Patriot is deemed to "reside" for venue purposes in New York, New York as it is subject to personal jurisdiction in New York at the time this action is being commenced, and pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, in New York, New York.  Further, the parties agreed in the Warrant and related transaction documents that venue was proper in this Court.

**FACTUAL ALLEGATIONS**

**A.    CVII Obtained the Series B Warrant in Connection with its Acquisition of a Large Stake in Restricted Shares from CEO Mariano**

10.    On or about December 13, 2015, Patriot announced a transaction whereby CVII and other investors entered into a Securities Purchase Agreement with Patriot and its Chief Executive Officer, Steven M. Mariano ("Mariano"), providing for the sale to the investors of: (a) $30 million in Patriot stock by Mariano for his own benefit, and (b) $20 million in shares newly issued by Patriot for general corporate purposes. As further consideration to the purchasers, Patriot agreed to issue Series A and Series B Warrants to the investors in the transaction.

11.    Patriot reported the foregoing transaction on a Form 8-K filed with the Securities and Exchange Commission ("SEC") on or about December 14, 2015.

12.    Upon disclosure of Patriot and Mariano's sale of stock and warrants, Patriot's stock price immediately and sharply declined.

13.    In response to the market reaction, Patriot and Mariano asked CVII to revise the terms of the transaction.  CVII accommodated the company's request and consequently the parties executed a Rescission and Exchange Agreement whereby the sale of newly issued shares by Patriot was rescinded but the sale of shares by Mariano went forward, enabling Mariano to cash out of 2,500,000 shares of Patriot stock in a private transaction.  In turn, the funds originally sent to Patriot by CVII were returned to CVII, while the funds provided to Mariano, including $13.5 million from CVII, were kept by him.  Patriot announced the revision of the prior transaction in a press release and a Form 8-K filed with the SEC on or about December 23, 2015.

14.    The provisions for Patriot to issue certain warrants to the investors were maintained in the Rescission and Exchange Agreement, with some modifications. Significantly, the Series B Warrant was preserved which was intended to provide price protection to the

investors in light of the clear risk factors inherent in the purchase of a large quantity of restricted shares by CVII from Patriot's CEO Mariano.  In particular, the ability of CVII to sell any of the shares acquired from Mariano was subject to the ongoing effectiveness of a registration statement to be filed by Patriot on a complex Form S-1 (because the company's IPO occurred less than a year prior), subjecting CVII to the risk of SEC review and resulting delays which would be outside CVII's control. In addition to the illiquidity risks, there were obvious investment risks such as: (a) CVII was buying shares from Mariano, who was the 62% controlling shareholder of Patriot making a major sale, where Mariano clearly had superior access to information about the company's prospects; (b) the company's capital needs remained uncertain in light of the rescission of the $20 million in new capital originally contemplated in the transaction with the investors; and (c) given the timing of this deal in late December 2015, the investors and market understood that year-end financial statements for the company would be forthcoming and those results were unknown at the time of the closing. Thus, the investors bargained for and obtained the Series B Warrant which contained a price adjustment mechanism to account for these risks and attendant uncertainty in the price of Patriot shares.

15. Although the Series B Warrant was issued to CVII by Patriot, Mariano concurrently agreed, through a stock back-to-back agreement, that upon exercise of the Series B Warrant by the holders, he would transfer to Patriot an equal number of shares from his own holdings such that no additional shares would be outstanding after such exercises, thereby eliminating the potential dilutive effect of the warrants on other Patriot stockholders.  The Series B Warrant, a true and correct copy of which is attached hereto as Exhibit A, provided that the underlying shares were prepaid and that CVII was entitled to exercise the Series B Warrant by delivering an Exercise Notice to Patriot and providing payment to Patriot of a nominal exercise

price of $.01 per share within one day of the Exercise Notice. Under paragraph 1(a) of the Series B Warrant, Patriot had one trading day after delivery of the Exercise Notice to deliver to CVII a confirmation of receipt of the Exercise Notice, including directions to Patriot's transfer agent to deliver the shares. Paragraph 1(a) of the Series B Warrant further required Patriot, through its transfer agent, to deliver the shares that were the subject of the Exercise Notice to CVII, on or before the third trading day following delivery of the Exercise Notice.

**B.** **CVII Attempts to Exercise Its Rights Under the Series B Warrant and Patriot Refuses to Deliver Shares.**

16. On March 30, 2016, anticipating an upcoming exercise of the Series B Warrant, CVII sent an email to Patriot that included detailed calculations of the number of shares issuable under the Series B Warrant. A true and correct copy of CVII's email to Patriot and accompanying attachments is attached hereto as Exhibit B. Based on the 10 day average pricing set forth in the Series B Warrant, the adjusted price for the shares sold to CVII by Mariano was calculated to be $4.06 per share which entitled CVII to acquire an additional 2,200,124 shares of Patriot stock upon exercise. *See* Ex. B. CVII requested confirmation of these figures, as is typical in such matters, but Patriot did not respond. On April 5, 2016, CVII delivered to Patriot an Exercise Notice under the Series B Warrant for 250,000 shares in accordance with the terms of the Warrant and CVII also expressed its intention to wire the funds to Patriot constituting the exercise price for such shares. A true and correct copy of the Exercise Notice is attached hereto as Exhibit C.

17. Later that same day, Patriot, through new counsel, sent a letter to CVII repudiating its obligation to deliver to CVII confirmation of receipt of the Exercise Notice and instructions to the transfer agent to deliver the shares, as required under the Warrant, and instead

stated that Patriot "will not honor any of the Exercise Notices at this time."  A true and correct copy of the letter from Patriot's counsel is attached hereto as Exhibit D.

18. As of April 13, 2016, Patriot still has refused to honor the Exercise Notice and has failed to deliver to CVII a confirmation of receipt of the Exercise Notice as required under the Series B Warrant and failed to deliver the shares as required under the Series B Warrant.

19. Patriot is therefore in breach of the Series B Warrant.

C. **Patriot Engaged in Improper Conduct in Connection with the Warrants**

20. Patriot's purported basis for refusing to comply with its obligations under the Series B Warrant is that the Office of Fraud Detection and Market Intelligence at the Financial Industry Regulation Authority ("FINRA") had supposedly in January 2016 launched an investigation into the parties' transaction "to determine the extent, if any, of any fraudulent activity that may have occurred leading up to or in connection with the transaction," and that Patriot's new counsel was also "conduct[ing] an investigation into the Transaction to determine the extent, if any, of any fraudulent or unlawful activity, or any breaches of the Transaction Documents that may have occurred in connection with the Transaction."  Ex. D.

21. Patriot advised CVII that it would not honor its Exercise Notice under the Series B Warrant until these purported investigations "are completed."  *Id.*

22. Despite the claim that FINRA launched an investigation in January 2016, as of the filing of this complaint some three months later in April 2016, CVII has not been contacted by FINRA and is not otherwise aware of any investigation by FINRA relating to the transactions with Patriot.

23. Moreover, even assuming the existence of any investigation into potential improper actions in connection with the transactions, such facts would not provide a basis for Patriot to renege on its obligations to CVII under the Series B Warrant.  Indeed, if any parties

engaged in wrongful, unethical and unlawful activity leading up to or in connection with the transaction, it has been Patriot and Mariano, whose actions have been erratic and reckless in a pattern of conduct that has harmed the public shareholders of Patriot and now has damaged CVII.

24.     By way of example, prior to the transactions with CVII detailed herein, Patriot launched a public stock offering in October 2015 for the apparent purpose of raising new capital. The market reacted very negatively to this news, at which point Patriot promptly terminated the offering and gave assurances to the market that it did not need new capital for its operations. Then, less than two months later, Patriot announced the transaction with CVII and two other investors, which contemplated a capital infusion into the company and a substantial stock sale by Mariano, its CEO.  As analysts at JMP Securities noted on December 15, 2015, while downgrading the price target on Patriot shares: "Executing on this complex capital raise with weeks to go in the year after assuring investors last month that the company was planning to wait several quarters before revisiting the market following a failed public capital raise not surprisingly has investors spooked."

25.     On February 24, 2016 (which was in the midst of the adjustment period for the pricing formula set forth in the Series B Warrant), Patriot announced its fourth quarter and year end 2015 earnings.  Patriot reported earnings per share of $0.19, missing the consensus analysts' expectations for earnings of $0.25 per share (a miss of almost 25%).  In its earnings announcement, Patriot also revised its guidance for 2016 revenues, earnings and EBITDA downward.  Patriot's share price dropped by over 25% in a single day following this announcement (from $6.11 to $4.54) on the worse-than-expected financial performance and less

optimistic outlook. The price continued to decline to $3.65 on March 2, a further decline of approximately 20%.

26. In an apparent effort to overcome the market disappointment in its financial performance and bolster its share price, on March 3, 2016, Patriot announced a stock repurchase program. Suspiciously, on that same day but evidently prior to the announcement, one of its board members, Charles Walsh, purchased 50,000 shares of Patriot common stock. A true and correct copy of the SEC Form 4 filed by Charles Walsh, is attached hereto as Exhibit E. Equally concerning and problematic, Mariano himself went into the market to purchase Patriot shares on March 11 and several days thereafter, although his activity was not revealed until later in March when Mariano filed belatedly on March 21 and 24 the Form 4's required by the SEC. The Form 4 requirements are key to giving shareholders timely notice of insider activity. Mariano eventually disclosed purchases of approximately 230,000 shares during March 2016, during which time Patriot's stock price was rising although the market did not have full disclosure of Mariano's insider purchasing activity.

27. These actions harmed CVII to the extent that the prevailing price of Patriot stock in late March 2016 had a direct impact on the adjustment mechanism set forth in the Series B Warrant and resulted in CVII having the right to acquire fewer shares than would have been the case without efforts of Patriot and Mariano to prop up Patriot's stock price.

28. Mariano also appears to be wasting corporate assets and resources by causing Patriot to engage in this dispute with CVII. As mentioned above, the obligations to CVII under the Series B Warrant to deliver stock will ultimately be absorbed by Mariano out of his shareholdings. Patriot as a company should be indifferent to the exercise by CVII of its rights under the Series B Warrant. Yet, Patriot (under the leadership and direction of CEO Mariano)

engaged counsel to "investigate" the transactions to determine if there was any "fraud" or "breach" in an apparent effort to avoid making good on its obligations to CVII to deliver the shares required under the Series B Warrant. This is a very expensive and likely futile undertaking that Patriot can ill afford.  Nor could the company afford a share repurchase as announced in March 2016 at a time when operational results were below expectations and the company had twice failed (in October and December 2015) to execute on raising new capital since the abortive stock offering in October 2015.

**D.  CVII Has No Adequate Remedy at Law and Is Entitled to Equitable Relief**

29. The Series B Warrant is a valid contract between CVII and Patriot.

30. CVII has fully performed under the Series B Warrant and remains ready, willing and able to perform any further obligations under the Series B Warrant.

31. Patriot has refused to deliver shares to CVII in breach of the Series B Warrant.

32. Patriot has the right to obtain the shares owed to CVII under the Series B Warrant from Mariano or it may issue additional shares of stock; accordingly, it is within Patriot's power to comply with its obligations under the Series B Warrant by delivering the shares owed to CVII.

33. CVII has and will suffer irreparable harm absent the award of specific performance and an injunction requiring Patriot to comply with its obligations under the Series B Warrant.

34. In particular, CVII is unable to liquidate its investment through the sale of the shares it is entitled to receive under the Series B Warrant and cannot recoup its investment by selling Patriot shares where Patriot has disavowed its duty to honor CVII's right to acquire shares under the warrant.

35. The uncertainty regarding CVII's interest in the stock and the remainder of its rights under the Series B Warrant also adversely affects CVII's ability to mitigate its risks.

36. Further, CVII's damages under the Series B Warrant for Patriot's breach will likely be very substantial. Based on the formula set forth in the Series B Warrant, CVII is entitled to the delivery of 2,200,124 shares of Patriot stock upon its complete exercise of the Series B Warrant. Patriot stock has been recently trading in the $7 to $8 per share range. Thus, CVII's damages for Patriot's breach of the Series B Warrant may exceed $16 million.

37. There are two other investors who obtained warrants from Patriot at or about the same time as CVII; Patriot has refused to deliver warrants to those investors pursuant to their exercise notices. If those other investors also seek recovery for Patriot's breaches, Patriot could be facing legal liabilities overwhelmingly greater than its resources to satisfy those monetary claims.

38. Indeed, in light of its debt and thin capitalization, in addition to the erratic management of the company and the apparent breaches of fiduciary duties by Mariano, the price of Patriot stock has been highly volatile. A further deterioration in Patriot's prospects could potentially lead to breaches of debt covenants rendering Patriot unable to borrow or otherwise access needed capital. In such case CVII may be without recourse for the breaches alleged herein.

39. The parties repeatedly agreed that Patriot's failure to comply with its obligations under the Series B Warrant "will cause irreparable harm to [CVII] and that the remedy at law for any such breach may be inadequate. [Patriot] therefore agrees that, in the event of any such breach or threatened breach, [CVII] shall be entitled, in addition to all other available remedies, to an injunction restraining any breach, without the necessity of showing economic loss and without any bond or other security being required."

40. The balance of the equities tips decidedly in CVII's favor and merits the award of specific performance. CVII provided substantial consideration in December 2015 for the Series B Warrant. It has fully complied with its obligations under the Series B Warrant. It even agreed to revise terms of the parties' transaction documents at the specific request of and for the benefit of Patriot. In exchange, Patriot has failed and refused to fulfill its absolute obligation to deliver shares to CVII pursuant to the Exercise Notice. Patriot has taken steps either specifically designed to reduce or, at a minimum, with the known effect of depriving CVII of the benefit of the agreements. In essence, after receiving a substantial payment, Mariano became unhappy with the financial effect of his deal with CVII and has, for that reason, caused Patriot to refuse to honor the terms of the Series B Warrant for Mariano's personal financial benefit. In so doing, Mariano and Patriot are causing Patriot (and its shareholders) to incur unnecessary and unwarranted costs and liability for Mariano's benefit in violation of his fiduciary duties to the company.

41. The public interest in enforcing contracts and upholding the rule of law will be served by awarding equitable relief. Further, equitable relief in the form of specific performance will help maintain investor confidence in the efficient functioning of the equity and debt markets in the United States, and in particular, New York, where timely delivery of securities pursuant to obligations under warrants or other financial instruments is essential.

### CLAIM FOR RELIEF
### (Breach of Contract)

42. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 41 herein.

43. The Series B Warrant is a valid, binding contract between CVII and Patriot.

44. CVII has fully performed its obligations under the Series B Warrant.

45. Patriot has breached the Series B Warrant by, among other things, failing to deliver shares to CVII pursuant to CVII's Exercise Notice.

46. Patriot has also breached its obligations under the Series B Warrant to deliver additional shares of Patriot stock, upon a further exercise by CVII, by anticipatorily repudiating those obligations.

47. CVII has suffered irreparable injury as a result of Patriot's breaches of the Series B Warrant and will continue to suffer injury unless the Court specifically enforces the Series B Warrant with a mandatory injunction requiring Patriot to deliver to CVII the shares it is entitled to receive under the Series B Warrant.

48. CVII does not have an adequate remedy at law to compensate it fully for its injury and will only obtain the full benefit of its bargain if Patriot delivers the shares CVII is entitled to receive pursuant to the Series B Warrant.

49. Patriot is capable of performing its obligations pursuant to the Series B Warrant.

50. The balance of the equities tips toward the issuance of an injunction.

51. The public interest would be served by an injunction.

52. Patriot therefore should be required to specifically perform its obligations under the Series B Warrant and deliver to CVII the shares it is entitled to under the terms of that Warrant.

53. In the alternative, CVII has suffered damage as a direct and proximate result of Patriot's breaches in an amount to be proven at trial but expected to exceed $16 million based on the current market price of Patriot stock.

54. In addition to its loss of the rightful ownership of Patriot shares pursuant to its Exercise Notice, CVII has incurred consequential and incidental damages as a direct and

proximate result of Patriot's breaches, including damages resulting from CVII's inability to trade in the securities.

55. CVII has also incurred attorneys' fees and costs in its efforts to enforce its rights under the Series B Warrant; Patriot is liable to compensate CVII for those fees and costs under the terms of the Series B Warrant.

**WHEREFORE**, CVII demands judgment against Patriot as follows:

A. A finding that Patriot is in breach of the Series B Warrant held by CVII;

B. An Order specifically enforcing the Series B Warrant;

C. An Order granting CVII a mandatory, preliminary and permanent injunction precluding Patriot from taking any action inconsistent with CVII's rights under the Series B Warrant and requiring Patriot to comply with its obligations under the Series B Warrant to deliver shares to CVII;

D. An Order awarding CVII such other damages it has suffered as a result of Patriot's breach of the Series B Warrant, including money damages, interest, costs, expenses and attorneys' fees; and

E. An Order granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 14, 2016

                                          BALLARD SPAHR LLP

                                          By:  */s/Marjorie J. Peerce*
                                                Marjorie J. Peerce
                                                peercem@ballardspahr.com
                                                Julian W. Friedman
                                                friedmanj@ballardspahr.com
                                      919 Third Avenue, 37th Floor
                                      New York, NY 10022-3915
                                      (212) 223-0200 (telephone)
                                      (212) 223-1942 (facsimile)

                                      *Attorneys for CVI Investments, Inc.*

OF COUNSEL:

M. Norman Goldberger (*pro hac vice* motion to be filed)
Laura E. Krabill (*pro hac vice* motion to be filed)
goldbergerm@ballardspahr.com
krabilll@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 864-8850