**Zachary L. Rowen**
Direct Dial: 212.906.4555
zachary.rowen@lw.com

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

July 3, 2019

**BY ECF**

Hon. George B. Daniels
United States District Court
Southern District of New York
500 Pearl St., Room 1310
New York, NY 10007

> Re: Letter Motion Requesting Rule 37.2 Conference and Order to Compel in *Hudson Bay Master Fund Ltd. v. Patriot National Inc., et al.*, No. 16 Civ. 02767 (GBD) (RLE)

Dear Judge Daniels:

I write on behalf of Hudson Bay Master Fund Ltd. ("Hudson Bay") in connection with the discovery this Court has permitted pursuant to its May 28, 2019 Order. As the Court will recall, that Order permitted Hudson Bay to take discovery regarding the "basis for Patriot's decision not to honor the Warrants." (ECF No. 347.) This is a key issue in Hudson Bay's tortious interference claim against Steven Mariano, since the only question left to be resolved is whether Mariano's conduct caused Patriot's breach. In its March 28, 2019 Memorandum of Decision, the Court recognized that Hudson Bay was previously blocked from taking such discovery because Mariano "broadly invoked privilege to prevent Hudson Bay from testing the basis" for that decision. (March 28, 2019 Mem. of Decision at 38.) On May 28, the Court authorized Hudson Bay to take discovery on that issue, clearly anticipating that claims of privilege would not be an obstacle.

Notwithstanding that Order, Patriot—which obviously possesses information relevant to its decision—is attempting to block Hudson Bay from taking discovery into this issue by continuing to improperly claim that all evidence regarding its decision is privileged. Not only has Patriot refused to produce responsive documents, but its counsel have also instructed its former board members not to offer testimony on the subject (as we have learned from speaking with counsel for these witnesses). These tactics have precluded Hudson Bay from scheduling depositions until this issue is resolved.

As set forth below, to the extent such privilege ever existed, it has long been waived. In light of the limited 60-day window in which Hudson Bay has to seek this discovery, Hudson Bay seeks an order from the Court to compel Patriot: (i) to produce all documents responsive to Hudson Bay's document requests; and (ii) to cease instructing its prior Board members not to answer questions on this issue.

LATHAM&WATKINS LLP

Immediately after Your Honor reopened discovery, Hudson Bay requested documents from Patriot related to its decision not to honor the Warrants—including those that Patriot had previously withheld on the basis of privilege. (*See* May 30, 2019 Email from B. Bondi to S. Turner, attached hereto as Ex. 1.)  After initially stating that they would consider the request, counsel for Patriot recently told Hudson Bay that it is unwilling to produce the requested documents—even going so far as to refuse Hudson Bay's service of a subpoena for the documents. (*See* June 26, 2019 Email from P. Linken to Z. Rowen, attached hereto as Ex. 2.)  Moreover, while attempting to schedule depositions of Patriot's former board members, Hudson Bay has learned that Patriot's counsel has instructed these witnesses not to testify regarding the reason for Patriot's decision not to perform on the contract at issue, on the basis that such communications are privileged and cannot be discussed.  To date, Hudson Bay has not received any materials from Patriot in response to its requests; nor is there any point to Hudson Bay scheduling depositions in this matter if the witnesses are going to again claim privilege on the key issue on which they are to be deposed.

Patriot has no basis upon which to continue to assert privilege over the basis for Patriot's decision not to honor the Warrants.  To the extent privilege ever existed over the relevant communications, Mariano—Patriot's Chief Executive Officer, President, Chairman of the Board, and designated Rule 30(b)6 representative—waived it during earlier discovery.  Specifically, Mariano was repeatedly asked during his deposition about the basis for Patriot's decision not to honor the Warrants.  This included questions about his understanding regarding whether Hudson Bay was permitted to "borrow" or "short" Patriot's shares under the operative agreements. Mariano invoked privilege in response to all such questions, and stated that all underlying discussions regarding Patriot's decision took place in the presence of counsel.  (*See, e.g.*, Transcript of Steven M. Mariano ("Mariano Tr."), attached hereto as Ex. 3, at 96:4-18 ("Q: Mr. Mariano, is, is there any basis for your decision other than -- not to honor the warrants -- other than the advice of counsel?   MR. WILSON: "Your" being Patriot National?   MR. GOLDBERGER: Patriot National. *A. Other than the advice of counsel, no*."); Mariano Tr. at 103:16-106:13 ("Q. Other than your counsel, did you have any discussions about borrowing or shorting stock with respect to the December 13th agreement before it was signed? *A. I don't believe so*."); Mariano Tr. at 189:6-191:21 (stating that conversations with counsel provided the sole basis for his statement in an e-mail that contract with Hudson Bay barred the "[s]hort sale or holding of shares to short before the deal closed").)

Mariano's invocation of the privilege to block inquiry into these key issues is a clear and unambiguous waiver, binding Mariano and Patriot alike.  This Circuit follows the well-established doctrine that a party waives the privilege when it invokes the protection to block inquiry into its state of mind while also claiming that its actions were permissible.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (holding that the attorney-client privilege "may implicitly be waived when defendant asserts a clam that in fairness requires examination of protected communications"); *Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997) (stating that a party "cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand to deny . . . access to the advice given by counsel where that advice").  "[L]ike many other courts have found, 'it would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary

LATHAM&WATKINS LLP

of access to material that might disprove or undermine the party's contentions.'" *Arista Records, LLC v. Lime Group*, LLC, No. 06 Civ. 5936, 2011 WL 1642434, at *2–3 (S.D.N.Y. Apr. 20, 2011) (citation omitted).

Mariano and Patriot took precisely the actions that well-established precedent holds to be a waiver: both took the position that they acted in good faith and without an improper motive when they refused to perform under the operative agreements, while simultaneously using privilege to block Hudson Bay from testing those claims. Specifically, both Patriot and Mariano claimed that they understood the operative agreements to state that Hudson Bay could not borrow Patriot stock before the disclosure of the transaction. (*See* Patriot National Inc.'s Answer to Amended Complaint and Counterclaims ("Patriot Answer"), Dkt. No. 122, ¶¶ 62, 67); (Steven M. Mariano's Amended Answer and Affirmative Defenses to the Amended Complaint and Amended Counterclaims ("Mariano Answer"), Dkt. No. 128, ¶¶ 9, 39-40.) That assertion alone puts their "understanding" of the agreement at issue, and is sufficient to constitute a waiver. *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (finding waiver where plaintiff sought to block inquiry into certain communications despite articulating its "understanding" of contract in order to permit opposing party "a fair opportunity to assess and challenge [the] factual assertions at trial").

Moreover, both Patriot and Mariano further injected their understanding of the agreements into the litigation by alleging that they were "induced" into entering the transaction. (Patriot Answer ¶¶ 69-74; *see also* Mariano Answer ¶¶ 88-94.) In particular, both Patriot and Mariano claimed that Hudson Bay made a false statement about "not employ[ing] manipulative short-selling strategies for self-gain," which they believed to be prohibited under the transaction documents. (Patriot Answer ¶¶ 70-72; Mariano Answer ¶¶ 90-91.) Because such claims are sufficient to put their state of mind "at issue," any attempt to invoke privilege over discussions about Patriot's performance under the agreements constitutes a waiver. *See Sax v. Sax*, 136 F.R.D. 542 (D. Mass. 1991) (finding defendant waived privilege with respect to its interpretation of contract when it brought counterclaims based on fraud and misrepresentation). Finally, Mariano claimed Patriot decided not to honor the Warrants pursuant to advice from counsel. Fairness dictates that a party cannot simultaneously put such matters at issue and at the same time invoke privilege to deny the opposing party the opportunity to test its claims. *See Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894 (S.D.N.Y. 1990) (finding waiver and holding that where a party intends to rely on the advice of counsel as a defense, "that advice becomes a factual issue, and opposing counsel is entitled to [disclosure]").

Further, there should be no doubt that Mariano had the ability to waive privilege on behalf of Patriot. Patriot itself designated Mariano as its Rule 30(b)(6) witness for a variety of noticed topics, *including* "[t]he reasons for Patriot's refusal to issue shares to the Investors pursuant to the Warrants.*" (*See* June 7, 2017 email from B. Bondi to M. Nicholson, attached hereto as Ex. 4 (emphasis added).) It is well established that a company's corporate designee has the capacity to waive privilege on its behalf. *See Sanofi-Synthelabo v. Apotex Inc.*, 299 F. Supp. 2d 303, 308 (S.D.N.Y. 2004) (granting motion to compel and finding that [plaintiffs'] Rule 30(b)(6) witness waived company's privilege). Indeed, Mariano confirmed during his deposition that he was

LATHAM & WATKINS LLP

"prepared to testify on behalf of Patriot National" on various items—including Patriot's decision not to honor the Warrants. (*See* Mariano Tr. at 22:2-24.)

Even aside from his status as Patriot's 30(b)(6) witness on issues related to Patriot decision not to honor the warrants, Mariano had the ability to waive the privilege on behalf of Patriot given his status at the time of his deposition as an officer, director, and owner of a majority of Patriot stock. (*See* Mariano Tr. at 35:2-3.) In *Commmodity Futures Trading Comm'n v. Weintraub*, the United States Supreme Court confirmed that, "for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." 471 U.S. 343, 348 (1985). "As an inanimate entity, a corporation must act through agents." *Id.; cf. U.S. v. Wells Fargo*, 2015 WL 3999074, at *2-3 (S.D.N.Y. 2015) (stating that officers and directors can waive corporate privilege but holding that individual "several levels removed from Wells Fargo's executive management" could not). The same principles apply here: at the time of his deposition, Mariano was not a mere employee; he was the CEO, President, Chairman, and owned a majority of Patriot's stock. (*See* Patriot Answer ¶ 2.) In light of this, Mariano was undoubtedly able to effect a waiver on Patriot's behalf.

Accordingly, Hudson Bay respectfully requests the Court to order Patriot to produce all documents responsive to Hudson Bay's document requests, and permit its prior Board members to answer questions on this issue. In light of the 60-day discovery period, Hudson Bay further requests that the Court stay all discovery until this issue is resolved and extend all deadlines as appropriate.

Respectfully submitted,

Zachary L. Rowen
of LATHAM & WATKINS LLP

cc:     All counsel of record (via ECF)

# EXHIBIT 1

| | |
|---|---|
| **From:** | Turner, Serrin (NY) |
| **Sent:** | Wednesday, June 5, 2019 8:35 PM |
| **To:** | Bondi, Bradley J. |
| **Cc:** | Rowen, Zachary (NY); Parvis, Elizabeth (NY); Linken, Peter J.; Hall, Jason M. |
| **Subject:** | RE: Mariano discovery |

Brad —

Following up on the below, could you please advise:
(1) whether Cahill will represent Pesch, Del Pizzo, and/or Corey and will accept service of the subpoenas we provided last week;
(2) whether you need a subpoena for the documents requested below; and
(3) whether the litigation trustee intends to assert any privilege objection in response to inquiry into the reason for Patriot's breach of the Warrants.

Given the 60-day discovery schedule set by the Court, we would appreciate a response as soon as possible.

Thanks,
Serrin

**From:** Turner, Serrin (NY)
**Sent:** Friday, May 31, 2019 2:31 PM
**To:** Bondi, Bradley J. <bbondi@cahill.com>
**Cc:** Rowen, Zachary (NY) <Zachary.Rowen@lw.com>; Parvis, Elizabeth (NY) <Elizabeth.Parvis@lw.com>; Linken, Peter J. <PLinken@cahill.com>; Hall, Jason M. <JHall@Cahill.com>
**Subject:** RE: Mariano discovery

Brad—

Attached please find deposition and document subpoenas for Christopher Pesch, Jack Del Pizzo, and Michael Corey.  Please let us know if you will accept service on their behalf or whether we will need to arrange for personal service.  If you know of other counsel representing them, please let us know, and we can direct the subpoenas to those attorneys instead.

We've used placeholder dates for the depositions but are happy to work with you (or their other counsel) on scheduling, as well as location.

Thanks,
Serrin

**From:** Turner, Serrin (NY)
**Sent:** Friday, May 31, 2019 12:16 PM
**To:** 'Bondi, Bradley J.' <bbondi@cahill.com>
**Cc:** Rowen, Zachary (NY) <Zachary.Rowen@lw.com>; Parvis, Elizabeth (NY) <Elizabeth.Parvis@lw.com>; 'Linken, Peter J.' <PLinken@cahill.com>; 'Hall, Jason M.' <JHall@Cahill.com>
**Subject:** RE: Mariano discovery

Brad —

With regard to documents, we request that Patriot produce:

- unredacted versions of the documents listed in Categories 1.4, 2, 3, 6, and 7 (with Bates stamps listed in Appendices 5, 6, 7, 10 and 11) of Patriot's Redaction Log (attached) regarding "Exercise Notices," "Regulatory Filings," "Draft Board Minutes," "Communications Concerning Regulatory Inquiries and Reviews" and the "FINRA Investigation"; and

- the documents withheld and listed in Categories 1.4, 2, 5, and 6 (with Bates stamps listed in Appendices 5, 6, 9, and 10) of Patriot's Privilege Log (also attached) regarding "Exercise Notices," "Regulatory Filings," "Communications Concerning Regulatory Inquiries and Reviews" and the "FINRA Investigation."

Based on the descriptions in the logs, these documents appear to fall squarely within the subject on which Judge Daniels re-opened discovery.

Please let us know if you need us to send you a formal subpoena for these documents, or whether this email request will suffice.

Thanks,
Serrin

---

**From:** Turner, Serrin (NY)
**Sent:** Thursday, May 30, 2019 11:39 AM
**To:** 'Bondi, Bradley J.' <bbondi@cahill.com>
**Cc:** Rowen, Zachary (NY) <Zachary.Rowen@lw.com>; Parvis, Elizabeth (NY) <Elizabeth.Parvis@lw.com>; Linken, Peter J. <PLinken@cahill.com>; Hall, Jason M. <JHall@Cahill.com>
**Subject:** RE: Mariano discovery

We currently intend to depose the individuals present at the Board meeting:

Mariano
Chris Pesch
Jack Del Pizzo
Michael Corey
Quentin Smith
Austin Shanfelter

Again, the depositions would all be focused on the reason for the Board's decision not to honor the warrants.

Thanks,
Serrin

---

**From:** Bondi, Bradley J. <bbondi@cahill.com>
**Sent:** Thursday, May 30, 2019 11:14 AM
**To:** Turner, Serrin (NY) <Serrin.Turner@lw.com>
**Cc:** Rowen, Zachary (NY) <Zachary.Rowen@lw.com>; Parvis, Elizabeth (NY) <Elizabeth.Parvis@lw.com>; Linken, Peter J. <PLinken@cahill.com>; Hall, Jason M. <JHall@Cahill.com>
**Subject:** Re: Mariano discovery

Who do you want to depose?

**Bradley J. Bondi | Partner**
**Cahill Gordon & Reindel LLP**
1990 K Street, N.W., Suite 950, Washington, D.C. 20006
80 Pine Street, New York, NY 10005
**t**: +1.202.862.8910 | **t**: +1.212.701.3710 | **f**: +1.866.836.0501 | bbondi@cahill.com
www.cahill.com

On May 30, 2019, at 7:59 AM, "Serrin.Turner@lw.com" <Serrin.Turner@lw.com> wrote:

Brad –

We will get the document requests to you shortly and are happy to meet and confer with respect to any issues you have with them.  But for the depositions, we intend to inquire into the reason for the Board's decision not to honor the Warrants, which is precisely what the Court has ordered discovery to be reopened for.  As you're aware, previously Patriot and Mariano claimed that the decision was based on attorney-client advice and blocked all questioning into the decision based on privilege.  We do not want to schedule depositions only to have the same thing happen again.  If you do plan to raise the same objection and instruct witnesses not to answer, then we need to know that as soon as possible so that we can promptly litigate the issue.

Thanks,
Serrin

---

**From:** Bondi, Bradley J. <bbondi@cahill.com>
**Sent:** Thursday, May 30, 2019 10:45 AM
**To:** Turner, Serrin (NY) <Serrin.Turner@lw.com>
**Cc:** Rowen, Zachary (NY) <Zachary.Rowen@lw.com>; Parvis, Elizabeth (NY) <Elizabeth.Parvis@lw.com>; Linken, Peter J. <PLinken@cahill.com>; Hall, Jason M. <JHall@Cahill.com>
**Subject:** Re: Mariano discovery

Serrin,

We will inquire, but I have difficulty understanding why you would think we would agree to a blanket statement without seeing the requests and the specific documents in question.  I would envision we would need to consider on a case-by-case basis, but I will discuss with our client and let you know.

Best regards,
Brad

---

**Bradley J. Bondi | Partner**
**Cahill Gordon & Reindel LLP**
1990 K Street, N.W., Suite 950, Washington, D.C. 20006
80 Pine Street, New York, NY 10005
**t**: +1.202.862.8910 | **t**: +1.212.701.3710| **f**: +1.866.836.0501 | bbondi@cahill.com
www.cahill.com

On May 30, 2019, at 7:20 AM, "Serrin.Turner@lw.com" <Serrin.Turner@lw.com> wrote:

Brad,

As you probably have seen, earlier this week the Court reopened discovery with respect to Hudson Bay's pending tortious interference claim against Mariano, in order to enable Hudson Bay to obtain documents and

depose witnesses concerning the basis for Patriot's decision not to honor the Warrants.  We intend to send out document and deposition subpoenas shortly.

We want to confirm that the Patriot litigation trustee does not intend to object to any documents or testimony sought on this issue on the basis of privilege.  If it does intend to object, we will need to litigate that issue promptly.

Please let us know as soon as you are able.

Thanks,
Serrin

**Serrin Turner**

**LATHAM** & **WATKINS** **LLP**
885 Third Avenue
New York, NY 10022-4834
Direct Dial: +1.212.906.1330
Fax: +1.212.751.4864
Email: serrin.turner@lw.com
http://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

* * * * * * * * * * * * * * * * * * * * * *

The information contained in this e-mail message is confidential and may be privileged.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you believe you have received this communication in error, please notify the sender immediately by replying to this email and then delete this email from your system.  Thank you.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Linken, Peter J. <PLinken@cahill.com> |
| **Sent:** | Wednesday, June 26, 2019 3:02 PM |
| **To:** | Rowen, Zachary (NY) |
| **Cc:** | Bondi, Bradley J.; Turner, Serrin (NY); Parvis, Elizabeth (NY) |
| **Subject:** | Re: Mariano discovery - subpoena duces tecum |

Zach,

I conferred with the Trustee, and we are not authorized to accept service.

Best,
Peter

Sent from my iPhone

_____

**Peter J. Linken | Counsel**
**Cahill Gordon & Reindel LLP**
80 Pine Street, New York, NY 10005
**t**: +1.212.701.3715 | **f**: +1.212.378.4137 | plinken@cahill.com
www.cahill.com
On Jun 25, 2019, at 12:32 AM, "Zachary.Rowen@lw.com" <Zachary.Rowen@lw.com> wrote:

> Peter,
>
> Attached please find a subpoena for documents directed to Patriot National.  This subpoena covers the
> same materials that we requested in our May 31, 2019 email to you (in which we also asked if you
> needed us to send a formal subpoena).  Given that these requests have been outstanding since that
> time, the deadline provided for in the subpoena is one week.  We assume you will accept service on
> behalf of the Litigation Trustee but please confirm in writing that you will do so.
>
> Thanks,
> Zach
>
> **Zachary L. Rowen**
>
> **LATHAM & WATKINS LLP**
> 885 Third Avenue
> New York, NY 10022-4834
> Direct Dial: +1.212.906.4555
> Fax: +1.212.751.4864
> Email: zachary.rowen@lw.com
> http://www.lw.com
>
> _____
>
> This email may contain material that is confidential, privileged and/or attorney work product for
> the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others
> or forwarding without express permission is strictly prohibited.  If you are not the intended
> recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

<Patriot Subpoena Duces Tecum.pdf.secure>

* * * * * * * * * * * * * * * * * * * * *

The information contained in this e-mail message is confidential and may be privileged.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you believe you have received this communication in error, please notify the sender immediately by replying to this email and then delete this email from your system.  Thank you.

# EXHIBIT 3

Page 1

```
 1
 2    UNITED STATES DISTRICT COURT
 3    SOUTHERN DISTRICT OF NEW YORK
 4    -------------------------------------
 5    HUDSON BAY MASTER FUND LTD.,
 6            Plaintiff,
                                16 Civ. 02767
 7       - against-          (GBD)(RLE)
 8    PATRIOT NATIONAL, INC. and
      STEVEN M. MARIANO,
 9
              Defendants.
10
        -and-
11
      AMERICAN STOCK TRANSFER & TRUST
12    COMPANY, LLC as Transfer Agent to
      Defendant Patriot National, Inc.,
13
              Nominal Defendant.
14    -------------------------------------
      CVI INVESTMENTS INC.,
15
              Plaintiff,
16                              16 Civ. 2787
         -against-           (GBD)(RLE)
17
      PATRIOT NATIONAL, INC.,
18
              Defendant.
19    -------------------------------------
20                  CONFIDENTIAL
21          VIDEOTAPED DEPOSITION OF
22              STEVEN MARIANO
23            June 13, 2017
24              9:03 a.m.
25
```

```
                                          Page 20
 1            CONFIDENTIAL - S. MARIANO
 2       Q.    Over time, did Patriot National
 3   gain clients other than GIC?
 4       A.    It did.
 5       Q.    In or about 2014, moving ahead,
 6   was GIC the majority of Patriot National's
 7   business?
 8       A.    It was.
 9       Q.    I think we have seen the number
10   60 percent.  Does that ring right to you?
11       A.    That sounds pretty close.
12            (Brief interruption.)
13       Q.    Can you tell me who some of the
14   other clients were of Patriot National
15   besides GIC?
16       A.    Sure.  Zurich Insurance Company,
17   Scottsdale Insurance Company, Ullico
18   Casualty Insurance Company.
19            Who else?  American Insurance
20   Group, AIG.
21       Q.    In the 2015 time period, do you
22   know how much in revenue GIC provided to
23   Patriot National?
24       A.    In 2015?
25       Q.    2015.
```

```
 1              CONFIDENTIAL - S. MARIANO
 2       A.    I believe it to be somewhere
 3    around 50 to 60 percent.
 4       Q.    Do you have a number?
 5       A.    I don't have a number off the
 6    top of my head, no.
 7       Q.    If we looked at the total
 8    revenues of Patriot National and applied
 9    the number 50 to 60 percent, we would come
10    up with the numbers?
11       A.    Yes.  I think it is in the
12    public documents.
13       Q.    That is fine.
14             (So marked for identification as
15       Mariano Exhibit 1.)
16       Q.    Mr. Mariano, I have placed in
17    front of you what is entitled, "Notice of
18    30(b)(6) deposition of Patriot National
19    Inc. by Plaintiffs Hudson Bay Master Fund
20    Limited and CVI Investments, Inc.  I will
21    ask you if you have seen that before.
22       A.    Yes.
23       Q.    Did you see it in connection
24    with preparing for this deposition?
25       A.    Yes.
```

```
                                        Page 22
 1            CONFIDENTIAL - S. MARIANO
 2       Q.     Your counsel has advised us that
 3   you are prepared to testify on behalf of
 4   Patriot National on the items beginning on
 5   page 6 that are marked number 1, number 5,
 6   number 6, number 7, number 10, number
 7   11 --
 8       A.     Okay if I write?
 9       Q.     Absolutely.
10       A.     1?
11       Q.     I will go back over it again.
12   1, 5, 6, 7, 10, 11, 12 and 13.  Is that
13   accurate?
14       A.     Let me read through them.
15       Q.     Sure.  Let me rephrase it.
16            As I understand it, you are here
17   to testify not only on behalf of yourself,
18   but on behalf of Patriot National on those
19   subjects?
20       A.     Let me read and make sure that
21   is accurate.
22       Q.     Fine.
23            (Pause.)
24       A.     Yes, that's accurate.
25       Q.     Did you do anything to prepare
```

```
                                        Page 23

 1           CONFIDENTIAL - S. MARIANO
 2   to testify on those subjects?
 3              MR. BONDI:  I caution the
 4         witness, you can say yes, but I don't
 5         want you to get into any specific
 6         preparation that you did with counsel.
 7         Q.    Mr. Mariano, so you
 8   understand -- and counsel on all sides
 9   have been pretty courteous about this --
10   if any of my questions intrude on what
11   your counsel perceives to be the
12   attorney-client privilege, I am sure they
13   will say so and then give you instructions
14   on how to answer.
15         A.    Okay.
16         Q.    The question now is a yes or no
17   question.  Did you do anything to prepare
18   in order to answer the questions that
19   relate to the subjects --
20         A.    Yes, I was here yesterday.
21         Q.    Can you tell me what you did?
22              MR. BONDI:  Mr. Mariano, I just
23         caution you, I don't want you to
24         reveal any discussions you had with
25         counsel, but you can say generally
```

```
 1              CONFIDENTIAL - S. MARIANO

 2        that you met with counsel.

 3        A.    Yes.  I met with counsel

 4   yesterday.

 5        Q.    Other than meeting with counsel,

 6   did you do anything else to prepare to

 7   answer these subjects?

 8        A.    No.

 9        Q.    In preparation for this

10   deposition, have you met with counsel?

11        A.    Yes.

12        Q.    How many times?

13        A.    Twice.

14        Q.    Was the most recent time

15   yesterday?

16        A.    Yes, sir.

17        Q.    What was the prior time?

18        A.    A week or two back.

19        Q.    When you say you met with

20   counsel, do you mean the Cahill firm?  Do

21   you mean Mr. Wilson?  Do you mean somebody

22   else?

23        A.    All counsel.

24        Q.    So Mr. Wilson was present?

25        A.    Yes, sir.
```

Page 94

```
 1              CONFIDENTIAL - S. MARIANO
 2       A.    I am.
 3       Q.    Patriot National declined to
 4   honor those; isn't that right?
 5       A.    That is correct.
 6       Q.    Can you tell me why?
 7             MR. BONDI:  Object to the form.
 8       Calls for information protected by the
 9       attorney-client privilege.
10             Mr. Mariano, I do not want you
11       to answer if it involves -- if that
12       decision was in any way shaped on
13       advice of counsel.
14       A.    I can't answer that question,
15   per advice of counsel.
16       Q.    Let's probe that for just a
17   minute because I think it's fairly
18   important.
19             Prior to consulting counsel, had
20   you determined whether or not you were
21   going to honor any exercise of warrants by
22   CVII?
23       A.    The conversation of whether I
24   was going to, or the company, or both?
25       Q.    The company.  Let's start with
```

1           CONFIDENTIAL - S. MARIANO

2    that.

3        A.    The company had several

4    conversations with its attorneys, the

5    board of directors, and discussed it.

6        Q.    What I am asking is prior to

7    talking to lawyers.

8        A.    No.

9              MR. BONDI:  Mr. Mariano --

10        sorry.  He answered.  I was trying to

11        help.

12        A.    No.

13        Q.    Is it your testimony that the

14    decision to not honor the warrants is

15    based on legal advice?

16              MR. BONDI:  Mr. Mariano, if you

17        have an independent understanding of

18        the decision -- strike that.

19              If there was a decision that was

20        made that was outside the advice of

21        counsel, you can answer that.  But I

22        don't want you to answer that question

23        if in answering that it implicates

24        that counsel was -- the advice of

25        counsel.

                                          Page 96

1              CONFIDENTIAL - S. MARIANO
2        Q.      All I want to know is a yes or
3    no answer.   That is exactly what you are
4    trying to get at, I think.
5        A.      Repeat the question.
6        Q.      What I would like to know,
7    Mr. Mariano, is, is there any basis for
8    your decision other than -- not to honor
9    the warrants -- other than the advice of
10   counsel?
11              MR. WILSON:   "Your" being
12        Patriot National?
13              MR. GOLDBERGER:   Patriot
14        National.
15       A.      Other than the advice of
16   counsel, no.
17       Q.      Mr. Mariano, is there any basis
18   for your decision personally not to honor
19   the warrants other than the advice of
20   counsel?
21       A.      No.
22       Q.      So the record is absolutely
23   clear, so we have it on the record -- let
24   me ask counsel.
25              MR. GOLDBERGER:   If I ask him

Page 97

```
 1              CONFIDENTIAL - S. MARIANO
 2       what the advice of counsel was, I
 3       assume you will instruct him not to
 4       answer?
 5              MR. BONDI:  That's correct.
 6              MR. GOLDBERGER:  John?
 7              MR. WILSON:  That's correct.
 8              MR. GOLDBERGER:  I don't want to
 9       waste a lot of time doing that.
10       Q.    And you would follow that
11   instruction.  Is that right?
12       A.    Most likely.
13       Q.    Mr. Mariano, would you look at
14   Exhibit 1 for a minute?  I just want to
15   direct your attention to topic number 13
16   on page 8, which reads, "The reasons for
17   Patriot's refusal to issue shares to
18   investors pursuant to the warrants."
19              Do I understand your testimony
20   to be that in response to that question
21   the answer is "advice of counsel"?
22              MR. BONDI:  I will instruct the
23       witness not to answer.
24       Mr. Goldberger, we have served
25       objections with respect to number 13.
```

Page 98

```
 1            CONFIDENTIAL - S. MARIANO
 2       Mr. Mariano is unable to answer that
 3       question without revealing discussions
 4       with counsel.  You have got all of the
 5       testimony that we are offering on
 6       number 13.
 7            MR. GOLDBERGER:  Okay.  Fair
 8       enough.  I just wanted to make that
 9       record, Brad.  Thank you.
10            (So marked for identification as
11       Mariano Exhibit 11.)
12       Q.    Mr. Mariano, I am showing you
13   documents that bear the Bates numbers
14   PNCGR 00013822 through 23.  They appear to
15   be a series of emails.  My first question
16   is going to be, have you seen these
17   before?
18       A.    No.
19       Q.    Do you have any reason to
20   believe that the email that appears to be
21   from Mr. Pesch to you was not received by
22   you?
23       A.    No reason to believe that, no.
24       Q.    Do you see Mr. Pesch writes to
25   you, on December 10th, at 8:37 p.m., among
```

```
 1          CONFIDENTIAL - S. MARIANO
 2            MR. GOLDBERGER:  That is fair on
 3      privilege.
 4            THE VIDEOGRAPHER:  Going off the
 5      record at approximately 11:15.
 6            (Recess.)
 7            THE VIDEOGRAPHER:  The time now
 8      is approximately 11:18.  We are back
 9      on the record.
10      Q.    Mr. Mariano, your counsel
11  suggested that I ask you what was conveyed
12  in the conversation that made you think
13  you had little negotiating room.
14      A.    Yes.
15      Q.    And what was it?
16      A.    This was conversations that were
17  going on between me and Simpson, and so
18  what I was stating here was based upon my
19  conversations with the people at Simpson.
20      Q.    I see.  Who at Simpson, by the
21  way?
22      A.    There were several people.  Gary
23  Horowitz, Lesley Peng and two or three
24  other people that were involved there.
25      Q.    Did you talk to one or the other
```

```
                                        Page 102
 1            CONFIDENTIAL - S. MARIANO
 2    principally?
 3         A.    No.  All four or five of them.
 4         Q.    During this time frame, were you
 5    talking to them on a fairly regular basis?
 6         A.    No.  I wasn't, no.
 7         Q.    How frequently would you say you
 8    were talking to Simpson?
 9         A.    During this period,
10    December 10th to December 13th, probably
11    two or three times.
12         Q.    Did you ever ask anyone to fully
13    explain the terms of the Series B
14    warrants?  And I am now not asking you
15    what was discussed.  I am just asking if
16    you had the discussion.
17         A.    Was there a discussion --
18         Q.    Before December 13th that you
19    were party to regarding what the Series B
20    warrants meant.
21         A.    No.  Not specifically, no.
22         Q.    How about generally?
23         A.    Generally, yes.
24         Q.    With whom?
25         A.    With counsel.
```

```
 1            CONFIDENTIAL - S. MARIANO
 2      Q.     Which counsel?
 3      A.     Simpson.
 4             MR. GOLDBERGER:  Again, I assume
 5      if I ask what the conversation was,
 6      you will direct not to answer.
 7      Correct?
 8             MR. BONDI:  Correct.
 9             MR. WILSON:  That is correct.
10      Q.     And you will follow that
11   instruction?
12      A.     Yes, sir.
13      Q.     Did you have any discussion in
14   that time frame whether shares of your
15   stock would be borrowed -- strike that.
16             Did you have any discussion in
17   that time frame with anyone about whether
18   shares of Patriot National could be
19   borrowed in the time frame of December 1st
20   through December 13th?
21      A.     I don't recall that
22   conversation; no.
23      Q.     Did you have any discussion with
24   anyone between December 1st and
25   December 13th about whether shares of
```

```
                                    Page 104
 1            CONFIDENTIAL - S. MARIANO
 2   Patriot National stock could be sold short
 3   by the investors after the deal closed?
 4            MR. BONDI:  Mr. Goldberger, if
 5        you are going to sort of piecemeal go
 6        through, you are essentially getting
 7        to the advice itself.
 8            MR. GOLDBERGER:  I am not, Brad.
 9            MR. BONDI:  If you say, "If you
10        had a discussion about this," "Have
11        you had discussion about this" -- I
12        was waiting to see where you are going
13        with this, but I just want to make the
14        record clear that I am going to
15        intervene here if it continues to be
16        piecemeal of "Did you have a
17        discussion about this?  Did you have a
18        discussion about this?"  That
19        essentially is revealing the mental
20        impressions of counsel and the advice
21        that was given by counsel to
22        Mr. Mariano.
23            I don't know where you are going
24        with this, and I just wanted to
25        caution on this particular line.
```

```
 1            CONFIDENTIAL - S. MARIANO
 2              MR. GOLDBERGER:  Brad, I am not
 3       asking him to tell me what he said.  I
 4       am fully entitled to know whether he
 5       had discussions about a subject,
 6       period.  That is not getting to advice
 7       of counsel.
 8              There are key issues in this
 9       case.  I am going to ask him whether
10       or not he had discussions about them.
11       If you want to instruct him not to
12       answer, that is your privilege.  We
13       will fight it out later.  I will not
14       clutter the record with the debate.
15       Let's keep going.  If you want to
16       instruct him, instruct him.
17       A.    Can you repeat the question?
18       Q.    Sure.  Did you have any
19    discussion with anyone between
20    December 1st and December 13th about
21    whether shares of Patriot National stock
22    could be sold short by the investors after
23    the deal closed?
24       A.    Yes.
25       Q.    With whom?
```

```
 1            CONFIDENTIAL - S. MARIANO
 2      A.     With counsel.  Simpson.
 3      Q.     Do you know who at Simpson?
 4      A.     Several people along the line.
 5      Q.     Again, what was that discussion?
 6             MR. WILSON:  Objection.
 7      Instruct him not to answer.
 8      Q.     I assume you will follow that
 9      instruction?
10      A.     Yes, sir.
11      Q.     Mr. Mariano, did you have any
12      discussion with J.P. Morgan about the
13      subject of whether shares of Patriot
14      National stock could be sold short by
15      investors after the deal closed?
16      A.     After the deal closed?
17      Q.     My question is whether the
18      discussion took place between December 1st
19      and December 13th about whether shares
20      could be sold after the deal closed.
21      A.     I don't recall any conversation
22      specifically with J.P. Morgan, no.
23      Q.     Do you recall any generally?
24      A.     No.
25      Q.     Did you have any discussions
```

```
                                              Page 107
 1              CONFIDENTIAL - S. MARIANO
 2     with J.P. Morgan about whether shares of
 3     stock could be borrowed by the investors
 4     between December 1st and December 13th in
 5     the time period December 1st through
 6     December 13th?
 7         A.    Not that I recall at all.
 8         Q.    Other than your counsel, did you
 9     have any discussions about borrowing or
10     shorting stock with respect to the
11     December 13th agreement before it was
12     signed?
13         A.    I don't believe so.
14              MR. GOLDBERGER:  Let's take a
15         five-minute break.
16              THE VIDEOGRAPHER:  The time now
17         is approximately 11:25.  We are going
18         off the record.  This is the end of
19         media 2.
20              (Recess.)
21              THE VIDEOGRAPHER:  The time now
22         is approximately 11:45.  We are back
23         on the record.  This is the beginning
24         of media 3.
25         Q.    Mr. Mariano, once you learned
```

Page 108

```
 1              CONFIDENTIAL - S. MARIANO
 2    that the transaction was not going to be
 3    exactly as you had first heard it -- that
 4    is, that there was not going to be just a
 5    sale of shares at a small discount but
 6    that there would be added benefits to the
 7    investors like warrants, did that cause
 8    you any concern?
 9              MR. BONDI:  Object to the form.
10        A.    Not specifically.
11        Q.    Generally?
12        A.    There was -- yes, there is
13    always concern when there is warrants.
14    There is always concern about what they
15    look like and how they appear.  But in
16    general, yes, concern.  Specifically, no.
17        Q.    What were your general concerns?
18        A.    My general concern was we had
19    really never done, or as a public company,
20    issued warrants.
21        Q.    Did you do anything to alleviate
22    your concerns?
23        A.    Explain what you are asking.
24        Q.    You said you had general
25    concerns about the warrants and you said,
```

```
                                    Page 187

 1          CONFIDENTIAL - S. MARIANO
 2   of which you were a part, with Citadel,
 3   concerning any impropriety done prior to
 4   deal close, regardless of who else was
 5   present?
 6      A.    No.  There was speculation from
 7   Citadel --
 8            MR. BONDI:  Mr. Mariano, listen
 9       to the question.  I don't think that
10       is what he asked.
11            THE WITNESS:  I am sorry.
12      Q.    We'll get there in a minute.
13   The beginning of the question is, did you
14   have any conversations with Citadel in
15   which they expressed a view as to whether
16   there was any impropriety done prior to
17   deal close?
18      A.    Yes.
19      Q.    With whom did you have that
20   conversation?
21      A.    Rory Murphy.
22      Q.    What did he say?
23      A.    He thought that there was
24   impropriety somewhere done for the stock
25   to go down that low.
```

```
 1          CONFIDENTIAL - S. MARIANO
 2      Q.    Did he say what the impropriety
 3  was?
 4      A.    No.
 5      Q.    Do you know if Citadel's legal
 6  counsel spoke to Simpson Thacher about the
 7  subject of any impropriety?
 8      A.    I do not know.  I know they
 9  talked, but I do not know that the -- what
10  they conversed about.
11      Q.    But you do believe that Simpson
12  and Citadel talked?
13      A.    I believe so.
14      Q.    Citadel's lawyer, that is?
15      A.    Citadel's lawyers.  Yes.
16      Q.    How do you know that?
17      A.    Just based upon the
18  conversations that occurred between Pesch,
19  Simpson and what I understand to be Rory
20  and his legal group.
21      Q.    I understand.
22      A.    I was not on the calls, so I
23  cannot express whether they talked
24  about -- whatever they talked about.  I
25  have no idea.
```

```
                                        Page 189
 1            CONFIDENTIAL - S. MARIANO
 2        Q.     That was my next question.  Do
 3    you know what that conversation consisted
 4    of?
 5        A.     No.
 6        Q.     Then you write on the next page,
 7    "Short sale or holding of shares to short
 8    before the deal closed was barred in the
 9    contract."  Do you see that?
10        A.     What page is that?
11        Q.     Very top, 7947.
12        A.     Yes.
13        Q.     That is you talking to
14    Mr. Murphy.  Is that correct?
15        A.     I believe so.
16        Q.     What is your basis for that
17    statement?
18        A.     Legal conversations with our
19    attorneys.
20        Q.     Let's start with something
21    simple.  You didn't make that statement
22    based on reading the contract yourself,
23    did you?
24        A.     No.
25        Q.     What did your attorneys tell you
```

```
 1            CONFIDENTIAL - S. MARIANO
 2    about that subject?
 3                MR. WILSON:  Objection.
 4                MR. BONDI:  Objection.  That
 5         calls for attorney-client privileged
 6         information.  The statement that
 7         Mr. Mariano is making in an email is a
 8         position that has also been asserted
 9         in this litigation.  The fact of
10         asserting a position does not mean
11         that the substance of the legal advice
12         behind that position is discoverable.
13              So, the advice that Mr. Mariano
14         would have received from counsel is
15         privileged information.  The position
16         that he is taking here is not
17         privileged.  We produced it in an
18         email.  But beyond the support for the
19         discussion, the legal advice that led
20         to this position here is going to be
21         privileged.
22                MR. GOLDBERGER:  For the
23         record -- and I am not going to get in
24         an argument with you because I assume
25         you are going to instruct him not to
```

```
                                    Page 191

 1           CONFIDENTIAL - S. MARIANO
 2      answer.  But for the record, when
 3      someone consults counsel for the
 4      purpose of disclosing to an outside
 5      party a position, that conversation is
 6      not intended, nor is it confidential
 7      and, therefore, there is no
 8      attorney-client privilege.
 9           We are not going to resolve this
10      debate here.  I just wanted you to
11      understand my position.
12           MR. BONDI:  And we disagree with
13      that position.
14           MR. GOLDBERGER:  That is fine.
15           MR. BONDI:  We agree with you
16      that we won't be able to resolve it
17      here, but disagree with the legal
18      position.
19      Q.   I assume you will follow your
20   counsel's instruction?
21      A.   Yes.  The only thing I would
22   say, if you look at the second statement,
23   "Legal chat should happen before I land."
24   That means legal counsel should be talking
25   to each other, not me, not Rory, should be
```

```
                                          Page 192
 1            CONFIDENTIAL - S. MARIANO
 2   talking to each other as I mentioned
 3   earlier.  Other than that...
 4       Q.    Then you say, "Decision will not
 5   be made until we have evaluated everything
 6   to of the fullest extent."  Do you see?
 7       A.    Yes.
 8       Q.    What did that mean?
 9       A.    Don't know.
10            That could have meant a lot of
11   things at that moment.
12       Q.    Then you write, "Love to get
13   your thoughts on what you would like to
14   see happen regarding deal terms."
15            Do you see that?
16       A.    Yes.
17       Q.    Do you know what that means?
18       A.    Yes.
19       Q.    What does it mean?
20       A.    It means that -- I believe this
21   was between the 17th and 20th -- 21st or
22   somewhere in that range.
23       Q.    I can tell you it is the 21st.
24       A.    So the conversation at that
25   point was, if we were not able to rescind
```

```
 1            CONFIDENTIAL - S. MARIANO
 2    the whole transaction we were doing
 3    something that we could to get all the
 4    other investors out of this transaction
 5    because we had no idea what had just
 6    happened to us.  So asking one of our
 7    major investors what did they want to see
 8    happen was basically what we were looking
 9    at.
10        Q.    Then you write, "I believe you
11    guys are still over the wall at this point
12    and this communication is fine."
13            Then you have a question,
14    "Chris?"
15        A.    Questioning legal counsel on
16    whether that conversation was true or
17    false.
18        Q.    What did you mean by "you guys
19    are still over the wall"?
20        A.    At that time, believing that
21    Citadel had been over the wall and had
22    signed an NDA.
23        Q.    That is what I was going to ask.
24    Do you mean by over the wall that they had
25    signed an NDA?
```

```
                                              Page 314

 1

 2                    CERTIFICATION

 3

 4

 5      I, DEBRA STEVENS, a Notary Public for

 6   and within the State of New York, do

 7   hereby certify:

 8      That the witness whose testimony as

 9   herein set forth, was duly sworn by me;

10   and that the within transcript is a true

11   record of the testimony given by said

12   witness.

13      I further certify that I am not

14   related to any of the parties to this

15   action by blood or marriage, and that I am

16   in no way interested in the outcome of

17   this matter.

18      IN WITNESS WHEREOF, I have hereunto

19   set my hand this 14th day of June, 2017.

20

21   _____

22          DEBRA STEVENS

23

24              *     *     *

25
```

# EXHIBIT 4

| | |
|---|---|
| **From:** | Bondi, Bradley J. <bbondi@cahill.com> |
| **Sent:** | Wednesday, June 7, 2017 7:53 AM |
| **To:** | Nicholson, Michelle (DC) |
| **Cc:** | Mintz, Adam S.; KrabillL@ballardspahr.com; Clark, Christopher (NY); PeerceM@ballardspahr.com; GoldbergerM@ballardspahr.com; Calabrese, Corey (NY); dberger@abv.com; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadandcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM; Turner, Serrin (NY); GershelB@ballardspahr.com; KunzJ@ballardspahr.com; KatsiffT@ballardspahr.com; Wheatley, Michael; Hall, Jason M.; Linken, Peter J. |
| **Subject:** | Re: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.) |

Counsel,

Please be advised that, pursuant to Hudson Bay Master Fund Ltd. and CVI Investments, Inc.'s Notice of 30(b)(6) Deposition of Patriot National, Inc ("Patriot National"), and consistent with Patriot National's objections to that notice, the following individuals will appear on behalf of Patriot National as to the topics indicated below:

• Steven M. Mariano (June 13, as scheduled): topics 1, 5, 6, 7, 10, 11, 12, and 13.

• Gex F. Richardson: topics 2, 3, 4, 8, 9, 15.

We propose June 16 at 8:00 am for the deposition of Mr. Richardson.

With respect to topic 14, Patriot National adopts the relevant testimony provided by Christopher Pesch in this matter as its Rule 30(b)(6) testimony on that topic.

Sincerely,
Brad Bondi

---

**Bradley J. Bondi | Partner**
Cahill Gordon & Reindel LLP
1990 K Street, N.W., Suite 950, Washington, D.C. 20006
80 Pine Street, New York, NY 10005
**t**: +1.202.862.8910 | **t**: +1.212.701.3710| **f**: +1.866.836.0501
**m**: +1.703.731.8864 | bbondi@cahill.com

CAHILL

On Jun 6, 2017, at 1:03 PM, "Michelle.Nicholson@lw.com" <Michelle.Nicholson@lw.com> wrote:

Counsel-
We have been in contact with counsel for Mr. Shanfelter. He is only available for deposition on June 14th of next week in Ft. Myers, FL. The deposition will be held at Veritext's Offices (2402 Bay Street Suite 106, Fort Myers, FL). Start time will be 9:30. Please let me know if you have any other questions or if this presents any issues.
Thanks,
Michelle

**From:** Nicholson, Michelle (NY)
**Sent:** Tuesday, May 30, 2017 1:57 PM
**To:** 'Mintz, Adam S.'; 'Krabill, Laura E.'
**Cc:** Clark, Christopher (NY); 'Peerce, Marjorie'; 'Goldberger, M. Norman'; Calabrese, Corey (NY); 'dberger@abv.com';
'Bondi, Bradley J.'; 'Owen, David'; 'Kavaler, Thomas J.'; 'Torres, Ivan'; 'Weinstein, Eric'; 'jwilson@broadandcassel.com';
'ekolmansberger@broadandcassel.com'; 'mgomberg@broadandcassel.com'; 'WMaher@WMD-LAW.com';
'gmahfood@broadandcassel.com'; 'ABialek@WMD-LAW.COM'; Turner, Serrin (NY); 'Gershel, Bradley'; 'Kunz, Joanna H.';
jwilson@broadandcassel.com; 'Katsiff, Timothy D'
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc.
v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel-
We've been in communication with counsel for Mr. Smith. He is only available for deposition on June 14th and 15th. Our
schedules only work for the 15th. As such, we've scheduled his deposition for June 15th in Ballard Spahr's Phoenix offices
(1 East Washington Street, Suite 2300, Phoenix, AZ 85004-2555). Although we don't believe it will be possible to
reschedule, please let us know if this raises any issues.
Thanks,
Michelle

**From:** Nicholson, Michelle (NY)
**Sent:** Tuesday, May 09, 2017 2:56 PM
**To:** 'Mintz, Adam S.'; 'Krabill, Laura E.'
**Cc:** Clark, Christopher (NY); Friedman, Leah (NY); 'Peerce, Marjorie'; 'Goldberger, M. Norman'; Calabrese, Corey (NY);
'dberger@abv.com'; 'Bondi, Bradley J.'; 'Owen, David'; 'Kavaler, Thomas J.'; 'Torres, Ivan'; 'Weinstein, Eric';
'jwilson@broadandcassel.com'; 'ekolmansberger@broadandcassel.com'; 'mgomberg@broadandcassel.com';
'WMaher@WMD-LAW.com'; 'gmahfood@broadandcassel.com'; 'ABialek@WMD-LAW.COM'; Turner, Serrin (NY);
'Gershel, Bradley'; 'Kunz, Joanna H.'
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc.
v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel-
Please find attached notices of amended subpoenas for the production of documents and for testimony for Austin
Shanfelter and Quentin Smith.
Thanks,
Michelle

**From:** Nicholson, Michelle (NY)
**Sent:** Wednesday, April 12, 2017 4:47 PM
**To:** 'Mintz, Adam S.'; 'Krabill, Laura E.'
**Cc:** Clark, Christopher (NY); Friedman, Leah (NY); Peerce, Marjorie; Goldberger, M. Norman; Calabrese, Corey (NY);
dberger@abv.com; Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric;
jwilson@broadandcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com;
WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM; Turner, Serrin (NY); Gershel,
Bradley; Kunz, Joanna H.
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc.
v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel-
Please find attached a notice of subpoena for Citadel LLC.
Regarding deposition dates, we'd like to propose the following:
- Steven M. Mariano: May 2nd
- Yoav Roth/30(b)(6): May 4th or 5th
- For Pizzo, Pesch, and Walsh, can you please confirm whether these individuals are represented by counsel and,
  if so, by whom?
We look forward to proposed dates for the depositions of:
- Cindy Campbell
- Elizabeth Hensen

- David Quigley

Thanks,
Michelle

**From:** Mintz, Adam S. [mailto:AMintz@cahill.com]
**Sent:** Tuesday, April 11, 2017 8:04 PM
**To:** 'Krabill, Laura E.'
**Cc:** Clark, Christopher (NY); Friedman, Leah (NY); Peerce, Marjorie; Goldberger, M. Norman; Calabrese, Corey (NY); dberger@abv.com; Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM; Nicholson, Michelle (NY); Turner, Serrin (NY); Gershel, Bradley; Kunz, Joanna H.
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Laura and Michelle,

Thank you for getting back to us. We can confirm the following:
- Victor Simonte (HB) – April 25
- George Antonopolous (HB) – May 1
- Andrew Singer (CVII) – May 4
- Michael Spolan (CVII) – May 5
- Joel Gutteridge (HB) – May 11
- Tom Shields (Patriot) – May 16
- Brad Alles (CVII) – May 23
- Susan Sproule (CVII) – May 24

As to Mr. Pizzo and Mr. Pesch, they have limited availability as they no longer work for Patriot National and we would appreciate your flexibility. Can you please reconsider whether the offered dates work? For example, you appear to be otherwise available on April 26 for Mr. Roth's deposition. We will work on dates for Mr. Mariano and Mr. Walsh. We will discuss with our client the notices directed to Cindy Campbell, Elizabeth Hensen, and David Quigley.

We are awaiting additional dates from Plaintiffs for:
- Yoav Roth/HB 30(b)(6)
- Martin Kobinger/CVI 30(b)(6)

Adam

**From:** Krabill, Laura E. [mailto:KrabillL@ballardspahr.com]
**Sent:** Tuesday, April 11, 2017 2:54 PM
**To:** Mintz, Adam S.
**Cc:** Chris.Clark@lw.com; Leah.Friedman@lw.com; Peerce, Marjorie; Goldberger, M. Norman; Corey.Calabrese@lw.com; dberger@abv.com; Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM; 'Michelle.Nicholson@lw.com'; Serrin.Turner@lw.com; Gershel, Bradley; Kunz, Joanna H.
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Adam:

Per your email below, CVII can confirm that Messrs. Spolan and Singer are available on May 4 and 5 as you proposed. Mr. Alles is available on May 23, during the window you proposed. Ms. Sproule is not available on the dates you requested. She is available on May 23 or 24th. We are still trying to determine Mr. Kobinger's availability and will advise you shortly. Since Mr. Kobinger is CVII's 30(b)(6) designee and will appear only once, whatever date we arrange for his deposition will serve as CVII's 30(b)(6) deposition too. Please let me know if you have any questions or would like to discuss.

Laura

**From:** Mintz, Adam S. [mailto:AMintz@cahill.com]
**Sent:** Thursday, April 06, 2017 9:34 PM

**To:** Turner, Serrin (NY); Clark, Christopher (NY); Nicholson, Michelle (NY); Friedman, Leah (NY); KrabillL@ballardspahr.com; PeerceM@ballardspahr.com; GoldbergerM@ballardspahr.com; Calabrese, Corey (NY); 'dberger@abv.com'
**Cc:** Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadandcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.com
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel:

We propose that the depositions we noticed be scheduled for the following dates:

- Hudson Bay Capital Management LP – April 17
- CVI Investments, Inc. – April 24
- Victor Simonte - April 25, May 1
- Susan Sproule – April 25, May 1
- Michael Spolan – May 4, 5
- Andrew Singer - May 4, 5
- Yoav Roth – May 17-19
- Joel Gutteridge – May 17-19
- George Antonopoulous – May 22-26
- Martin Kobinger – May 22-26
- Brad Alles – May 22-26

Please let us know by next Tuesday whether these dates will work.

Adam

---

**From:** Mintz, Adam S.
**Sent:** Tuesday, April 04, 2017 7:34 PM
**To:** 'Serrin.Turner@lw.com' (Serrin.Turner@lw.com); Chris.Clark@lw.com; Michelle.Nicholson@lw.com; Leah.Friedman@lw.com; KrabillL@ballardspahr.com; PeerceM@ballardspahr.com; GoldbergerM@ballardspahr.com; Corey.Calabrese@lw.com; 'dberger@abv.com'
**Cc:** Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadandcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM
**Subject:** RE: Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel:

Last Thursday, we served the deposition notices listed in our e-mail below. In light of the current schedule, we intend to move forward with these depositions. Please provide dates for each of these depositions between mid-April and the end of May.

Adam

---

**From:** Mintz, Adam S.
**Sent:** Thursday, March 30, 2017 1:40 PM
**To:** 'Serrin.Turner@lw.com' (Serrin.Turner@lw.com); Chris.Clark@lw.com; Michelle.Nicholson@lw.com; Leah.Friedman@lw.com; KrabillL@ballardspahr.com; PeerceM@ballardspahr.com; GoldbergerM@ballardspahr.com; Corey.Calabrese@lw.com; 'dberger@abv.com'
**Cc:** Bondi, Bradley J.; Owen, David; Kavaler, Thomas J.; Torres, Ivan; Weinstein, Eric; jwilson@broadandcassel.com; ekolmansberger@broadandcassel.com; mgomberg@broadandcassel.com; WMaher@WMD-LAW.com; gmahfood@broadandcassel.com; ABialek@WMD-LAW.COM
**Subject:** Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al., No. 16-cv-2767 (S.D.N.Y.); CVI Investments, Inc. v. Patriot National, Inc., No. 1:16-cv-2787 (S.D.N.Y.)

Counsel:

Attached please find Defendants' notices of deposition for the following entities and individuals:

- CVI Investments, Inc.
- Hudson Bay Capital Management LP

- Victor Simonte
- Yoav Roth
- George Antonopoulous
- Joel Gutteridge
- Susan Sproule
- Michael Spolan
- Andrew Singer
- Martin Kobinger
- Brad Alles

Due to the size of the attachments. They are being sent in 3 parts.

Adam

_____

**Adam S. Mintz | Associate**
Cahill Gordon & Reindel LLP
80 Pine Street, New York, NY 10005
**t**: +1.212.701.3981 | **f**: +1.212.378.2539 | amintz@cahill.com

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The information contained in this e-mail message is confidential and may be privileged. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you believe you have received this communication in error, please notify the sender immediately by replying to this email and then delete this email from your system. Thank you.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements.

Latham & Watkins LLP

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements.

Latham & Watkins LLP