Case Number: CACE-17-012521 Division: 14
Filing # 58498486 E-Filed 06/30/2017 01:10:18 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

Case No.

PATRIOT NATIONAL, INC.,

     Plaintiff,

v.

KASOWITZ BENSON TORRES LLP,

     Defendant.

_____/

## COMPLAINT

Plaintiff, PATRIOT NATIONAL, INC., brings this Complaint for money damages against Defendant, KASOWITZ BENSON TORRES LLP, and states:

### Introduction

1.     This action involves a headline-grabbing New York-based law firm engaged by a Fort Lauderdale company for high-stakes litigation.   Instead of receiving legal services commensurate with a law firm that represents the President of the United States, the local company was subjected to fraudulent billings, malpractice, and other egregious misconduct that has caused millions of dollars in damages.

2.     In flagrant disregard for the trust its client placed in it, the New York-based law firm committed all sorts of wrongdoing.  It committed fraud by having its billers engage in outrageous misconduct, such as when one biller recorded 24 hours of work for the client in a single day, and when a biller recorded an average of 16 hours per day over a 17-day period. Given those fraudulent practices, it is no surprise that the law firm managed to bill its Fort Lauderdale client more than $3.4 million in attorneys' fees and costs in less than a year.  In

1

addition, by failing to become approved counsel for the insurer providing coverage for the client, the law firm created a situation where replacement counsel was forced to re-do substantial work, causing the client to incur significant—but entirely unnecessary—costs.  Worse still, when the client sought to bring on an insurer-approved replacement counsel to handle the litigation, the law firm attempted to hold the client's files hostage—in the middle of intense, deadline-driven litigation—until more payments were made.

3.     In short, this action turns on fraud, greed, extortion, and other blatant misconduct—all by a defendant that is supposed to be working for justice.  Because the New York-based law firm's actions represent everything that is wrong with the legal profession, and caused serious damages to a pillar of Broward County's community and economy, Plaintiff PATRIOT NATIONAL, INC. now seeks to hold Defendant KASOWITZ BENSON TORRES LLP accountable in this Court.

**Parties, Jurisdiction and Venue**

4.     Plaintiff, PATRIOT NATIONAL, INC. ("Patriot National"), is a corporation organized and existing under the laws of Delaware.  Patriot National is authorized to conduct business in the State of Florida and maintains its principal place of business in Fort Lauderdale, Broward County, Florida.

5.     Defendant, KASOWITZ BENSON TORRES LLP ("Kasowitz"), is a foreign limited liability partnership, registered to conduct business in the State of Florida, actually conducting business in the State of Florida, with partners residing in the State of Florida, and maintaining an office in Miami, Florida.

2

6.      This is an action for damages in which each cause of action exceeds $15,000, exclusive of attorneys' fees, interest, and costs.  This Court has jurisdiction pursuant to Section 26.012, Florida Statutes.

7.      Venue is proper in Broward County, Florida, because the within causes of action accrued in Broward County, and because the Defendant Kasowitz, maintains an office, and conducts business, in the State of Florida.  *Sections 47.011 and 47.051, Florida Statutes.*  In addition, the economic damage caused to Patriot National by virtue of the Kasowitz's conduct as set forth herein occurred in Broward County, Florida.  *See Tucker v. Fianson*, 484 So. 2d 1370, 1372 (Fla. 3d DCA 1986).

### Facts Giving Rise to this Action

8.      Kasowitz holds itself out as a national law firm with its primary focus on complex commercial litigation.  It boasts of having "highly talented lawyers [who] are committed to pursuing creative, aggressive and innovative approaches to our clients' most challenging legal matters."

9.      Through its Miami office and Miami attorneys, Kasowitz claims to have successfully handled complicated and sensitive cases and matters in Florida.  Kasowitz's website claims it has six partners based in its Miami office and a number of other lawyers.

10.     Kasowitz's founder and managing partner, Marc Kasowitz, has received recent notoriety as the leader of President Donald Trump's outside legal team.  Based on the biographical information for Mr. Kasowitz on the firm's website, any prospective client would expect to get the type of top-flight representation that one would expect from the President's law firm.  In a wave of unabashed bravado, Mr. Kasowitz says he has been described "as the 'toughest lawyer on Wall Street' and . . . as an 'uberlitigator,'" and further says he "is widely

regarded as one of the preeminent trial lawyers in the country." Mr. Kasowitz is fond of his tough-guy image, quoting praise about him being a "powerhouse," "the toughest of the tough guys," "one of the most prominent and feared lawyers in the United States," and someone who "beat[s] big banks."

11.    Despite the Kasowitz firm's significant expansion since its founding, Kasowitz's growth has subsided with layoffs and recent reports identifying significant departures of partners and declining revenues.

12.    Patriot National is a publicly traded company founded in 2003 as a conglomeration of several smaller insurance businesses previously established by Patriot National's chairman, president and CEO, Steven M. Mariano.

13.    Headquartered in Fort Lauderdale and one of the largest private employers in Broward County, Patriot National provides comprehensive technology and outsourcing solutions to assist insurance companies and employers mitigate risk, comply with complex regulations, and save time and money.  Among other things, Patriot National provides general agency services, technology outsourcing, software solutions, specialty underwriting and policyholder services, and claims administration services.

Patriot National Places its Trust in Kasowitz and
Hires the Law Firm to Protect its Interests

14.    On or about February 5, 2016, Patriot National engaged Kasowitz to, among other things, provide legal services on behalf of Patriot National in connection with the investigation and potential litigation relating to Patriot National and claims regarding the sale of securities by Patriot National. *See Exhibit "A."*

15.    Kasowitz undertook to provide additional legal services to Patriot National and/or its directors in connection with four lawsuits, namely: *Hudson Bay Master Fund Ltd. v. Patriot*

*National, Inc., et al.*, United States District Court, Southern District of New York, Case No. 16-cv-02767[1]; *CVI Investments, Inc. v. Patriot National, Inc.*, United States District Court, Southern District of New York, Case No. 16-cv-02787[2]; *Donoghue v. Patriot National, Inc., et al.*, United States District Court, Southern District of New York, Case No. 16-cv-7905[3]; and *Wasik v. Mariano, et al.*, Delaware Court of Chancery, Case No. 16-12953[4].  Together, the first two matters are referred to herein as the Hedge Fund Actions.

16.    Kasowitz agreed to render its invoices to Patriot National on a monthly basis. When Kasowitz did issue its invoices, they were submitted to Patriot National at its offices in Fort Lauderdale.

Kasowitz Was Never Approved as Counsel by Patriot National's Insurer,
Causing Patriot National to Needlessly Incur Substantial Fees and Costs

17.    Kasowitz was expressly aware of available insurance coverage to Patriot National and/or its officers and directors in connection with the above-referenced lawsuits, including coverage for defense costs.  Kasowitz was also expressly aware that it was not approved counsel for the insurer providing the coverage, and failed to take steps to become approved, or to otherwise ensure that its fees would be covered by available insurance.  Ultimately, Kasowitz was removed as counsel for Patriot National and new counsel had to be retained because the Kasowitz firm was not approved by the insurer in accordance with the express terms stated in the primary policy of insurance.

---

[1]    Kasowitz's record appearance in this case covered a ten-month period from May 5, 2016 through March 7, 2017.

[2]    Kasowitz's record appearance in this case covered a ten-month period from May 6, 2016 through March 7, 2017.

[3]    Kasowitz's record appearance in this case covered a three-month period from December 26, 2016 through March 6, 2017.

[4]    Kasowitz's record appearance in this case covered a two-month period from December 6, 2016 through February 10, 2017.

18.     As a result, the services Kasowitz claims to have provided to Patriot National had to be substantially, or entirely, re-done by its replacement counsel during a short period of time given the attendant court-imposed dates and deadlines and at substantial cost to Patriot National.

<u>Kasowitz Engaged in Fraudulent and Excessive Billing</u>

19.     During the short time of its representation of Patriot National, Kasowitz amassed more than $3.4 million in attorneys' fees and costs charged to Patriot National.

20.     Patriot National paid Kasowitz approximately $2 million for which it seeks recoupment in addition to other expenses unnecessarily incurred by Patriot National, and Patriot National also seeks wrongful act damages.

21.     The extraordinary amounts billed by Kasowitz did not appreciably further the interests of Patriot National, or the relative merits of the defense of Patriot National in the litigations and/or the prosecution of viable claims available to Patriot National.

22.     Moreover, a review of Kasowitz's invoices has revealed significant improprieties concerning Kasowitz's billing activities.

23.     For instance, the Kasowitz invoices confirm that the amount of time spent on any particular task and the amount billed to Patriot National were either wholly unnecessary, duplicative, non-billable activities, or alternatively, were grossly excessive (and in some instances appear to be beyond what would be humanly possible) and violative of the applicable rules of professional conduct.

24.     Despite holding itself out as being skilled in complex commercial litigation matters, Kasowitz spent an inordinate and unreasonable amount of time researching basic hornbook legal principles and drafting two pages of skeletal and threadbare affirmative defenses to be asserted in the Hedge Fund Actions.  Those affirmative defenses proved ineffective and

6

improperly drafted, at best, after they were stricken in large part by the court in the Hedge Fund Actions as being factually and legally deficient, to the substantial prejudice and expense of Patriot National. Even more time was billed for unsuccessfully defending against the opposing parties' motions to strike the affirmative defenses.

25.     Excessive amounts of time were spent researching other basic legal principles, such as the duty of good faith and fair dealing, notwithstanding Kasowitz claiming to be skilled in complex commercial litigation matters.

26.     On another occasion, Kasowitz billed Patriot National 2.7 hours for the otherwise non-billable task of e-filing a document. The same day, another Kasowitz biller charged Patriot National 5.0 hours to "assist filing . . .". One Kasowitz attorney charged Patriot National more than 13 hours on one day for cite-checking and "general help with filing."

27.     Prior to the filing of the cases referenced above, multiple Kasowitz billers charged an extraordinary amount of time researching and drafting potential claims that were available to Patriot National, but which it never asserted on behalf of Patriot National.

28.     Kasowitz also billed in such a manner where groups of tasks (sometimes as many as thirteen) were combined into one entry without delineation of the amount actually spent for each task in nearly every billing entry. This practice rendered it impossible to determine precisely what tasks were performed and the amount of time spent and billed for those tasks.

29.     Kasowitz routinely billed for duplicative assignments, inter-office conferences, e-mails, and telephone conferences among several attorneys and staff, each of whom appear to have billed for the same work product. By way of example, Kasowitz assigned as many as twenty-five billers for one matter. Consequently, collective single-day billings to Patriot National would total in excess of one hundred hours, with individual billers charging as much as

17 to 20 hours per day on consecutive days for the same or substantially related tasks. Kasowitz did all of this despite its public claim that it "staff[s] matters leanly."

30.     One biller brazenly claimed he billed **24 hours**, i.e. every waking moment, to Patriot National on drafting tasks. Together, he and his like-minded Kasowitz colleagues billed Patriot National 154.4 hours for a single, non-trial, day. The next day afforded the client no relief, with at least five Kasowitz billers charging Patriot National for preparation of binders.

31.     In fact, Kasowitz collectively billed its client for more than 83 hours to assemble binders.

32.     One Kasowitz biller would routinely bill Patriot National for staggering amounts and for hours beyond that which is possible. This biller claimed to have worked on Patriot National matters alone for:

- 17 hours per day on 7 different occasions,
- 16 hours per day on 14 different occasions,
- 14 hours per day on 19 different days,
- 35.6 hours over a two-day period,
- 272.8 hours over a 17-day period (an average of 16 hours per day), with just one day of not billing to Patriot National during that period.

33.     Other billing entries were so generic or cryptic they were impossible to decipher what services were actually being provided, such as "reviewing materials," "participating on call," "attention to strategy," and "tak[ing] notes . . . ."

34.     Given the grossly excessive and fraudulent billings to Patriot National, it is clear Kasowitz had no system of checks and balances by senior management to avoid such improprieties. If there was any such system or review, it was clearly ineffective.

8

35.     Kasowitz piled on the expense to Patriot National by billing thousands of dollars more to the client through a Kasowitz subsidiary entity and passing on those additional fees for non-legal "professional services."

36.     Kasowitz's billing practices were done in such a manner that it knew or should have known that its fees would not be accepted for reimbursement either through available insurance coverage (and the insurer's attendant billing requirements), or to recover from potentially responsible parties in the litigation matters.

37.     After over-charging Patriot National the senior Kasowitz attorney representing Patriot National on these matters has the temerity to identify Patriot National as two of his "Notable Representations." Perhaps "Notorious Representations" would be more apropos.

### Kasowitz Attempts to Extort Payment from Patriot National

38.     When Patriot National was required to hire new counsel approved by the insurance carrier, Kasowitz improperly threatened to impose a lien on the files in an attempt to extract even more money from Patriot National, despite the pendency of multiple cases in litigation with sensitive court-imposed deadlines and despite there being cause for Kasowitz's removal

39.     Patriot National has engaged the services of the undersigned counsel and is obligated to pay reasonable attorneys' fees and costs in connection with this matter.

40.     Patriot National is entitled to remuneration of its attorneys' fees under the wrongful act doctrine since, as a result of Kasowitz's wrongful conduct, Kasowitz placed Patriot National in such a position to cause it to incur additional litigation expenses necessary to protect its interests.

41.     All conditions precedent to the commencement of this action have been performed, waived and/or excused.

### Count I
### Fraud

42.     Patriot National incorporates the allegations set forth in Paragraphs 1 through 41 as though set forth in full herein.

43.     Kasowitz made false statements of material fact to Patriot National, including but not limited to, its representations that:

      a.     The services for which it billed Patriot National and as represented on the invoices were actually provided,

      b.     The services for which it billed Patriot National and as represented on the invoices were reasonable, and

      c.     The services for which it billed Patriot National and as represented on the invoices were necessary to protect Patriot National's interests.

44.     Kasowitz knew that the statements and representations made to Patriot National were false.

45.     Kasowitz made the statements and representations to Patriot National with the intention to induce Patriot National's reliance.

46.     Patriot National actually relied on the false statements and representations made by Kasowitz when Patriot National paid Kasowitz approximately $2 million.

47.     As a direct and proximate result of Kasowitz's fraud, Patriot National was damaged.

WHEREFORE, Plaintiff, PATRIOT NATIONAL, INC., demands judgment against Defendant, KASOWITZ BENSON TORRES LLP, for compensatory damages, interest, special

damages consisting of attorneys' fees and costs under the wrongful act doctrine, recoupment and/or disgorgement, litigation costs, and such further relief as may be deemed appropriate.

**Count II**
**Professional Malpractice and Negligence**

48.    Patriot National incorporates the allegations set forth in Paragraphs 1 through 41 as though set forth in full herein.

49.    As retained counsel, Kasowitz owed a duty to Patriot National to adequately and properly represent Patriot National's interests and to meet the standard of care attendant to its representation of Patriot National.   These legal duties arise as a result of the attorney-client relationship pursuant to Florida law and are independent of any written or oral agreement for legal services.

50.    Kasowitz breached the duties it owed to Patriot National and fell below the standard of care.

51.    Kasowitz's negligence included, but was not limited to:

    a.    placing its own interests above those of Patriot National;

    b.    failing to adequately supervise associates, paralegals, and other personnel rendering legal services to Patriot National.

    c.    failing to ensure that the legal services provided to Patriot National were reasonable and necessary and advanced the interests of Patriot National;

    d.    failing to ensure that it was approved counsel for the insurer(s) providing coverage for defense costs, causing Kasowitz to be removed as counsel for Patriot National and requiring new counsel to be retained.

    e.    billing in such a manner that rendered it impossible to determine the particular task performed and the amount of time spent to do so, and in a

11

> manner that would not have enabled Patriot National to be reimbursed for its attorneys' fees either through available insurance coverage, or from potentially responsible parties; and
>
> f.      billing Patriot National for tasks that were either wholly unnecessary, duplicative, non-billable, or were grossly excessive.

52.     As a direct and proximate result of Kasowitz's negligence, Patriot National was damaged.

WHEREFORE, Plaintiff, PATRIOT NATIONAL, INC., demands judgment against Defendant, KASOWITZ BENSON TORRES LLP, for compensatory damages, interest, special damages consisting of attorneys' fees and costs under the wrongful act doctrine, recoupment and/or disgorgement, litigation costs, and such further relief as may be deemed appropriate.

### Count III
### Breach of Fiduciary Duty

Patriot National incorporates the allegations set forth in Paragraphs 1 through 41 as though set forth in full herein.

53.     The relationship between an attorney and client is a fiduciary relation of the highest character and the attorney owes a duty of undivided loyalty to the client. Kasowitz owed fiduciary duties of honesty, loyalty, good faith, care and candor to Patriot National as its attorneys and to act in Patriot National's best interests at all times, whereby Kasowitz provided advice and counsel to Patriot National, and Patriot National reposed its trust and confidence in Kasowitz.

54.     Kasowitz breached its fiduciary duties owed to Patriot National. Those breaches included, but were not limited to:

> a.      placing its own interests above those of Patriot National;

12

b.     failing to adequately supervise associates, paralegals, and other personnel rendering legal services to Patriot National.

c.     failing to ensure that the legal services provided to Patriot National were reasonable and necessary and advanced the interests of Patriot National;

d.     failing to ensure that it was approved counsel for the insurer(s) providing coverage for defense costs, causing Kasowitz to be removed as counsel for Patriot National and requiring new counsel to be retained.

e.     billing in such a manner that rendered it impossible to determine the particular task performed and the amount of time spent to do so, and in a manner that would not have enabled Patriot National to be reimbursed for its attorneys' fees either through available insurance coverage, or from potentially responsible parties; and

f.     billing Patriot National for tasks that were either wholly unnecessary, duplicative, non-billable, or were grossly excessive.

55.     As a direct and proximate result of Kasowitz's breaches of its fiduciary duties, Patriot National was damaged.

WHEREFORE, Plaintiff, PATRIOT NATIONAL, INC., demands judgment against Defendant, KASOWITZ BENSON TORRES LLP, for compensatory damages, interest, special damages consisting of attorneys' fees and costs under the wrongful act doctrine, recoupment and/or disgorgement, litigation costs, and such further relief as may be deemed appropriate.

### Count IV
### Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

56.     Patriot National incorporates the allegations set forth in Paragraphs 1 through 41 as though set forth in full herein.

57.     Kasowitz and Patriot National entered into an agreement on or about February 5, 2016, whereby Kasowitz agreed to represent Patriot National and provide legal services to Patriot National.

58.     Kasowitz's contractual obligations owed to Patriot National were also governed by the implied covenant of good faith and fair dealing.

59.     Kasowitz failed to perform its contractual obligations and materially breached the agreement with Patriot National.  Kasowitz was contractually obligated to provide professional legal services to Patriot National, but breached that obligation in numerous ways, including but not limited to:

      a.     placing its own interests above those of Patriot National;

      b.     failing to adequately supervise associates, paralegals, and other personnel rendering legal services to Patriot National.

      c.     failing to ensure that the legal services provided to Patriot National were reasonable and necessary and advanced the interests of Patriot National;

      d.     failing to ensure that it was approved counsel for the insurer(s) providing coverage for defense costs, causing Kasowitz to be removed as counsel for Patriot National and requiring new counsel to be retained.

      e.     billing in such a manner that rendered it impossible to determine the particular task performed and the amount of time spent to do so, and in a manner that would not have enabled Patriot National to be reimbursed for its attorneys' fees either through available insurance coverage, or from potentially responsible parties; and

        f.        billing Patriot National for tasks that were either wholly unnecessary, duplicative, non-billable, or were grossly excessive.

60.    As a direct and proximate result of Kasowitz's breaches, Patriot National has been damaged.

WHEREFORE, Plaintiff, PATRIOT NATIONAL, INC., demands judgment against Defendant, KASOWITZ BENSON TORRES LLP, for compensatory damages, interest, special damages consisting of attorneys' fees and costs under the wrongful act doctrine, recoupment and/or disgorgement, litigation costs, and such further relief as may be deemed appropriate.

### Demand for Jury Demand

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Conrad & Scherer LLP
*Counsel for Plaintiff*
633 South Federal Highway
Fort Lauderdale, Florida 33301
Tel. No.: (954) 462-5500
Fax No.: (954) 463-9244

By:  /s William R. Scherer
    William R. Scherer
    Florida Bar No. 169454
    WScherer@conradscherer.com
    Albert L. Frevola, Jr.
    Florida Bar No. 857416
    AFrevola@conradscherer.com

Exhibit "A"

# KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

KENNETH R. DAVID
DIRECT DIAL: 212-506-1883
KDAVID@KASOWITZ.COM

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON, DC

February 5, 2016

**BY E-MAIL**

Christopher A. Pesch
Vice President, General Counsel &
Chief Legal Officer
Patriot National, Inc.
401 E. Las Olas Blvd., Suite 1650
Fort Lauderdale, Florida 33301

Re:  Terms and Conditions of Engagement

Dear Chris:

This letter confirms the retention of Kasowitz, Benson, Torres & Friedman LLP ("KBT&F") by Patriot National, Inc. (the "Company")

█████████████████████████████████████████████

KBT&F bills for its services based on the hourly time charges of its attorneys and legal assistants. A schedule of those hourly rates is attached. Disbursements (e.g., duplicating, postage, telefax, and other similar expenses) are billed separately. Bills are rendered on a monthly basis and are payable on receipt.

We require an initial retainer of $20,000.00 to undertake this representation. Any unused portion of the retainer will be returned to you when the matter is completed. Please forward the retainer promptly to us. Wiring instructions and billing rates are included at the end of this letter.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Christopher A. Pesch
Patriot National, Inc.
February 5, 2016
Page 2

    We are required to advise you that, under state law, in the
event of any fee dispute between you and KBT&F involving a sum
of more than $1,000 but less than $50,000, you have the option
to seek resolution of such dispute in an arbitration proceeding
conducted pursuant to Part 137 of the Rules of the Chief
Administrator of the Courts of the State of New York.

    Please return an executed original and keep one copy for
your files.

    We look forward to working with you.

                                    Sincerely,

                                    KASOWITZ, BENSON, TORRES
                                    & FRIEDMAN LLP


                             By:  _____
                                    Kenneth R. David

AGREED: Patriot National, Inc.


By:  _____
        Christopher A. Pesch


FUNDS SHOULD BE WIRED TO:

CITIBANK, N.A.
Private Bank
153 East 53rd Street
New York, New York 10022
ABA# 021 000 089
BIC# CITIUS 33 PBG
For the benefit of:
Kasowitz, Benson, Torres & Friedman LLP
Account #▮▮▮▮▮▮▮
Swift Code:  CITI US 33
Tax I.D. # 13-3720397
Please Reference:  Kenneth R. David

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

BILLING RATE RANGES

| | |
|---|---|
| Partners | $565 - $1250 |
| Associates | $290 - $725 |
| Staff Attorneys | $300 - $485 |
| Paralegals | $220 - $345 |